**NOT FOR PUBLICATION**

FILED

UNITED STATES COURT OF APPEALS

OCT 26 2020

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

BALMORE PRUDENCIO; MICHELLE QUINTERO, individually on behalf of themselves and all others similarly situated,

Plaintiffs - Appellants,

v.

MIDWAY IMPORTING, INC.; GRISI USA, LLC,

Defendants - Appellees.

No.    19-55150

D.C. No. 2:18-cv-01469-AB-RAO

MEMORANDUM*

Appeal from the United States District Court
for the Central District of California
André Birotte Jr., District Judge, Presiding

Argued and Submitted September 2, 2020*
Pasadena, California

Before:  SILER,** BERZON, and LEE, Circuit Judges.

Memorandum joined by Judge LEE and Judge SILER;
Dissent by Judge BERZON

In their putative class action lawsuit, Balmore Prudencio and Michelle

---

\*      This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.
\*\*      The Honorable Eugene E. Siler, United States Circuit Judge for the U.S. Court of Appeals for the Sixth Circuit, sitting by designation.

Quintero challenge the accuracy of the "natural" labeling on soap products made by Grisi Hnos SA De CV ("Grisi Mexico"). But instead of suing Grisi Mexico, they sued its American subsidiary, Grisi USA, LLC, and its distributor, Midway Importing, Inc. The district court dismissed the complaint, ruling that the plaintiffs had not plausibly alleged that Grisi USA and Midway Importing were responsible for the "natural" labeling. We review *de novo* a district court's grant of a motion to dismiss under Civil Rule of Procedure 12(b)(6) and "may affirm the district court's dismissal on any ground supported by the record." *Ebner v. Fresh, Inc.*, 838 F.3d 958, 962 (9th Cir. 2016) (quoting *ASARCO, LLC v. Union Pac. R.R.*, 765 F.3d 999, 1004 (9th Cir. 2014)). We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

1.  The district court correctly determined that the complaint does not plausibly allege that either Grisi USA or Midway Importing was responsible for the "natural" labeling on Grisi Mexico's products. To plead a cognizable claim, a complaint must "include sufficient 'factual enhancement' to cross 'the line between possibility and plausibility.'" *Eclectic Properties E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 995 (9th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). When faced with "two possible explanations, only one of which can be true and only one of which results in liability . . . [s]omething more is needed, such as facts tending to exclude the possibility that the alternative explanation is true, in order to render plaintiffs' allegations plausible." *In re Century Aluminum*

2

*Co. Sec. Litig.*, 729 F.3d 1104, 1108 (9th Cir. 2013).

The complaint states that Midway and Grisi USA "are together responsible for labeling . . . Grisi Products in the United States, including the soap Products at issue" and they "authorized the [ ] labels." But the sole factual basis for these conclusory allegations is that: (i) Grisi Mexico has an ownership interest in Midway and Grisi USA; (ii) Midway and Grisi USA share "common employees, ownership, and business functions"; and (iii) a translated article and an employee's LinkedIn profile indicate that Midway and Grisi USA are responsible for "marketing." While these allegations are "consistent" with the appellees' involvement with the "natural" labeling, they provide insufficient "factual enhancement to cross the line between possibility and plausibility." *Eclectic Properties E., LLC*, 751 F.3d at 995-96 (citation and internal quotation marks omitted).

First, it is well established that a parent-subsidiary relationship by itself is insufficient to impute liability. *See United States v. Bestfoods*, 524 U.S. 51, 61 (1998). While an exception can arise when there is an alter ego relationship, *see Kilkenny v. Arco Marine Inc.*, 800 F.2d 853, 859 (9th Cir. 1986), the complaint is devoid of any alter ego allegations. As a result, the appellants cannot state a claim against Midway or Grisi USA by virtue of Grisi Mexico's ownership interest in those companies. And in the absence of allegations plausibly tying either Midway or Grisi USA to the "natural" labeling, there is no significance in the fact that they share

3

"common employees, ownership, and business functions."

Second, generic references to "marketing" in a translated article and on an employee's LinkedIn page do not give rise to a plausible inference that Midway or Grisi USA were involved with the "Natural" labeling. "Marketing" is a vague term that can carry a multitude of meanings depending on the context. Merely attaching that term to a product distributor (Midway) and a manufacturer's foreign subsidiary (Grisi USA) — without more — is insufficient to create an actionable inference that those entities played a role in product labels. *See Landers v. Quality Commc'ns, Inc.*, 771 F.3d 638, 646 (9th Cir. 2014) ("sufficient detail" is needed "to support a reasonable inference" of actionable conduct). Thus, the complaint's conclusory allegations that the appellees are "responsible for" and "authorized" the labels falls short. *See Twombly*, 550 U.S. at 555 (an "entitlement to relief requires more than labels and conclusions") (citation and internal quotation marks omitted).

2. The appellants rely on a single district court decision to argue they can state a claim under California's Consumer Legal Remedies Act (CLRA) without alleging Midway or Grisi USA had any involvement with the "natural" labeling. In *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, however, we recognized that a claim under California's Unfair Competition Law (UCL) "cannot be predicated on vicarious liability" because liability must be based on "personal participation . . . and unbridled control." 494 F.3d 788, 808 (9th Cir. 2007) (quoting *Emery v. Visa Int'l Serv. Ass'n*,

4

95 Cal. App. 4th 952, 960 (2002)).  To permit a CLRA claim based on a vicarious liability theory would upend our decision in *Perfect 10* because, as the appellants themselves argue, a CLRA violation provides the requisite predicate for a UCL claim.  *See Klein v. Chevron U.S.A., Inc.*, 202 Cal. App. 4th 1342, 1383-84 (2012). We therefore reject the appellants' argument that a relaxed standard for vicarious liability permits their CLRA claim to proceed in the absence of allegations of "personal participation . . . and unbridled control" by the appellees.

3.      In short, the appellants must sue Grisi Mexico — the company that manufactured the soap and apparently labeled the product as "natural" — if they want to proceed with their lawsuit.

**AFFIRMED.**



FILED

OCT 26 2020

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

BERZON, J., dissenting:

I respectfully dissent.

In my view, the complaint sufficiently alleges that Defendants Grisi USA and Midway "personal[ly] participat[ed] in . . . and [had] unbridled control over" the labeling of the products sold in the United States. *Emery v. Visa Int'l Serv. Ass'n*, 95 Cal. App. 4th 952, 960 (2002) (internal quotation marks omitted). The complaint alleges that "Defendants Grisi USA and Midway are together responsible for labeling . . . Grisi Products in the United States, including the soap Products at issue" and that "Defendants Grisi USA and Midway authorized the false, misleading, and deceptive . . . labels . . . for the Products." It further alleges that Defendants and their employees represent themselves as providing "comprehensive . . . marketing" support for their suppliers, including responsibility for "*all* business and marketing aspects of Grisi brands in the U.S.," and that "Grisi USA and Midway have operated as a common enterprise while engaging in the acts and practices and other violations of law alleged herein, including labeling . . . the Products as 'Natural.'"

Taken together, these allegations state unequivocally that Defendants were directly engaged in determining the language on the labels of the products sold in this country. The allegations do *not* just state that Defendants do the "marketing"

1

in this country—"marketing" is an indistinct term, as the majority notes. Mem. 4. Instead, the allegations are that Defendants are "responsible for labeling" generally, "engag[ed] in the act[] [of] . . . labeling . . . the Products as 'Natural,'" and, more specifically, "authorized the false, misleading, and deceptive . . . labels." And these factual allegations are perfectly plausible: it is reasonable that U.S. subsidiaries would be the entities determining the labels on products sold in U.S. stores. Plaintiffs have thus already "cross[ed] 'the line between possibility and plausibility.'" *Eclectic Properties E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 995 (9th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). Our precedents do not require additional detail for the sake of detail.

As Plaintiffs allege that Defendants are directly responsible for the labels, *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788 (9th Cir. 2007), and *Emery* are inapposite. Both of those cases held that credit card companies could not be vicariously liable for unrelated products' allegedly unlawful advertisements, where there were no allegations that the credit card companies played any role in preparing or authorizing the advertisements. *Perfect 10*, 494 F.3d at 808–09; *Emery*, 95 Cal. App. 4th at 960. Here, Plaintiffs' allegations are specific enough to cover the requisite legal standard for direct liability, and no more specificity is required.